FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2019 JUL 11  PM 3: 26

TRAVIS LONG

    Plaintiff

CASE NO.:

U:19-CV-1277-ORL-31-TBS

vs.

New Bern Transport Corporation d/b/a
Pepsi Beverages Company

    Defendant(s).

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    TRAVIS LONG, Plaintiff herein, files this Complaint against NEW BERN TRANSPORT COMPORATION d/b/a PEPSI BEVERAGES COMPANY, Defendant(s) herein, and alleges:

    1.    This is an action under Title VII of the 1964 Civil Rights Act as amended, 42 U.S.C. Section 2000e-2(a) and Florida Civil Rights Act 760.01 et seq. for unlawful employment practices on the basis of race, color and retaliation. Plaintiff suffered said damages as a result of being subjected to race and color discrimination and from being unlawfully retaliated against and terminated by Defendant(s)s after Plaintiff complained about his treatment on countless occasions.

## JURISDICTION AND VENUE

    2.    Defendant is a Florida corporation or Foreign corporation/entity engaged in trade and commerce and doing and authorized to do business in the State of Florida in Orange County, Florida and within this Court's District.

    3.    This court has subject matter jurisdiction pursuant to Article III, Section 1

of the U.S. Constitution and 28 U.S.C. sections 1331, 1332 and 1343.

4.     This Court has supplemental jurisdiction over state law claims discussed

below under 28 U.S.C. Section 1367(a) because they arise out of the same case or

controversy.

5.     All conditions precedent to jurisdiction have occurred or been complied

with: a charge of discrimination was filed with the Equal Employment Opportunity

Commission and Florida Commission on Human Relations within three hundred days

and three hundred and sixty-five days of the acts complained of herein and Plaintiff's

Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment

Opportunity Commission's issuance of a right to sue letter. (See Exhibit "A")

6.     Venue is proper in U.S. District Court, Orlando Division, Orlando,

Florida, because Defendant's principal place of business in Florida is located in Orange

County, Florida and all actions material to the complaint have occurred in Orange

County, Florida or within this District.

## PLAINTIFF

7.     The Plaintiff TRAVIS LONG is a natural person residing in Osceola

County Florida and was doing so at all times material to this action. Plaintiff worked as

a Delivery Supervisor with Defendant(s) throughout the Central Florida, but

specifically within the Orange County and Osceola County District/Region. On

January 8, 2016, Plaintiff was terminated by Defendant(s).

## DEFENDANT(S)

8.     The Defendant(s)  NEW BERN TRANSPORT COMPORATION d/b/a

PEPSI BEVERAGES COMPANY, (hereinafter "Defendant(s)") are/is an active for-

profit corporation and/or entity doing business in Florida with its principal place of business at 1700 Directors Row, Orlando, FL 32809.

**FACTS RELEVANT TO PLAINTIFF'S CAUSES OF ACTIONS AND CLAIMS**

9.     Plaintiff worked as a DELIVERY SUPERVISOR with Defendant(s) for 18 years until his employment was unjustifiably terminated. During this time, Plaintiff was the only African American Delivery Supervisor at his job, received good evaluations and was an exemplary employee. Plaintiff was discriminated against because of his race, African American, he was subjected to a racially hostile work environment, he was retaliated against for constantly complaining about unfair treatment, he was subjected to disparate treatment and discriminatory treatment insofar as white employees were given preferential treatment and disciplined differently than African-Americans and minority employees, and a less experienced, educated, and tenured white employees such as Kevin Horton, was promoted over Plaintiff.

10.     In fact, as evidence of the racially hostile work environment Plaintiff endured, in 2013-2014, Plaintiff sought a promotion to a District Leader position. Plaintiff was told by Howard Corbett (white), who was a decision-maker and Market Director that he, Plaintiff, "was "too big, black and bald-headed and that's why he wasn't promoted". On other occasions, Plaintiff was told that the store managers were normally "white males" and that they would be intimidated by Plaintiff because of his race and appearance.

11.     In September/October 2014, 2 to 3 months after Chuck Adams ('Adams"), white, arrived at Pepsi as Sales Operations Manager and Plaintiff's Supervisor, Adams told Plaintiff that he, Adams, had been told that Plaintiff "wouldn't like you if you were

white or didn't like sports". To Plaintiff subjectively, and objectively as well, this was a racist and unfair statement. Adams repeated the same statement again several months later. Plaintiff responded by saying that was untrue and informed Adams that Plaintiff listen to and like country music and Plaintiff's wife is half- white.

12.     October 31, 2014 Adams asked for "Interventions" for employees Josh and Alfred for safety incidents.  In previous email Adams instructed Plaintiff to print out the interventions indicating that Plaintiff had spoken with them so we could discuss. Adams "called Plaintiff out" and belittled him about not having the "Interventions". Plaintiff explained he in fact had them and retrieved them off the printer. Adams never talked to white managers or supervisors in this demeaning manner.

13.     November 7, 2014 Adams was condescending, demeaning and arrogant towards Plaintiff, when Plaintiff tried to show him the "job hurt" paperwork. During the conversation Adams stated that if someone called the speak-up line, he would circle their name, referring to Plaintiff and intimating that he did not need Plaintiff's opinion or input. Again, Adams never belittled or talked down to white managers or supervisors in this demeaning or threatening manner.

14.     November 13, 2014 Adams sent an email around instructing employees to be 100% focused on EDOT (Electronic Department of Transportation).  Adams arrived in an office when Donna Minor (white) was showing Plaintiff the EDOT program.  Plaintiff explained he was following along with her on the computer and Adams stated "shut it down" to Plaintiff.  To this point, Adams was again attempting to be rude, and condescending in front of the class towards Plaintiff.

15.     Likewise, on November 25, 2014 Adams stated to a colleague Kevin Floyd (white) that Plaintiff was blind because Plaintiff [we] did not know how to use Report Builder. Adams stated this to Floyd in front of 2-3 of Plaintiff's peers. Again, it appeared to be an attempt to belittle Plaintiff in front of co-workers and others.

16.     From November 27, 2014 until Plaintiff's termination, on numerous occasions Adams has commented, or criticized or verbally reprimanded Bay Driver's about their shoes, jackets, socks. Bulk Drivers which were under the same rules never got mentioned, criticized or verbally reprimanded. Plaintiff was the Supervisor over the Bay Drivers, who were African-American or Latino.  However, Montgomery and Morse are both white supervisors over the Bulk department. Bulk offenders/drivers: Campbell – wore earrings every day, Ballard-didn't wear safety shoes every day as required, Coleman-didn't wear safety shoes every day as required, Chinea-earrings every day, which are prohibited.  These Bulk Driver's were all white, were not disciplined, yet the Bay Driver's were disciplined if they or Plaintiff violated any of these rules.

17.     As further evidence of the discriminatory and adverse treatment Plaintiff endured compared to his white counterparts, from December 2, 2014 until Plaintiff's termination Adams continued to delay and refuse to approve the Travel & Expenses in a timely fashion for Plaintiff; however, Adams was prompt to approve the travel and expenses in a timely fashion for the white supervisors.

18.     In a February 2015, Plaintiff attended a meeting with Chuck Adams (W/M), Dave Montgomery (W/M), Dan Shorten (W/M), Mike Garcia (H/M), Devon Morse  (W/M) and Plaintiff, Travis Long (B/M)   While discussing the employees of the Bay Department, Adams made statement about Eli Rios (Hispanic) by stating "Why is he

even working here, does he even speak English?" It was typical for Adams to make derogatory statements and comments about minorities and never get disciplined.

19.     On April 28, 2015, Plaintiff attended a meeting with Kevin Floyd (Unit Manager), Chuck Adams (Sales Operation Manager), Traci Rue (HR Rep).  This meeting was precipitated because Plaintiff bid on jobs and supposedly did not "get permission" from Adams and/or Floyd. However, this was not a policy and white supervisors always made bids on jobs without "permission". When a white supervisor made bids for jobs or sought a promotion it was called "showing initiative". For example, Plaintiff bid on a job with Greg Hoke and Plaintiff was not given an interview. Plaintiff asked Hoke why he was not afforded an interview like the white applicants and was told by Hoke that "HR has not given the okay on you". Thereafter, Plaintiff asked Adams why he was being held back and Adams informed Plaintiff he did not get alignment from him and Floyd. This did not occur with white supervisors.

20.     On July 29, 2015, Plaintiff had a Mid-year meeting with Adams. Plaintiff asked Adams if Plaintiff would be supported for an SDL role which is a  promotion and position Plaintiff applied for. Adams advised Plaintiff that he, Adams, does not support Plaintiff for the SDL role in Orlando because these positions have been pre-determined. Adams advised Plaintiff that Plaintiff was not in the plans to be moved up. Typically, employees place their name in for the position and are interviewed.  However Plaintiff was not afforded that opportunity.   This position was given to Amelia Zabel, who is a white female, who had 4-5 years of experience while Plaintiff had seventeen (17) years of experience at the time and superior credentials.

21.     As more evidence of the discriminatory and hostile attitude towards Plaintiff, on August 18, 2015 Nelson (white) did not get Walgreens Store #10566 order back out in the system as instructed. However, Adams and Floyd blamed Plaintiff for Nelson's failure and refusal to get the order back out. This was not even Plaintiff's responsibility yet Plaintiff was unfairly verbally reprimanded in front of the rest if the management team.

22.     On September 1, 2015 Lester Wilson did not finish his route and proceeded to bring 6-7 stops back to the office. Plaintiff informed Nikki Moore (W/F) that her 2 downtown stops would not make it and Plaintiff would call her in 10 minutes to explain. Within 5 minutes, Adams called Plaintiff and began to berate Plaintiff and ask why "Plaintiff didn't get Nikki's orders out and why Plaintiff didn't communicate to Nikki." Adams did not even give Plaintiff the opportunity to explain Plaintiff had told Moore what the situation was and Moore wasn't telling Adams the truth. In fact, Plaintiff personally delivered the stops that afternoon. Adams did not interact with white supervisors in this manner or berate them unfairly and unjustifiably.

23.     On October 6, 2015 Plaintiff had a Driver's meeting with Chuck Adams (My Supervisor) and Rory Anderson (Local Control and Compliance Officer) in attendance. Protocol and Procedures on breaks and how to take them were explained. Neither gave Plaintiff any indications that the information that Plaintiff provided and informed them as the manner in which the drivers were to take breaks was incorrect or violated any rules, regulations or policies.

24.     The October 6, 2015 meeting is very important as this was subsequently used as a pretext and basis to unfairly terminate Plaintiff on January 8, 2016. To this

point on November 25, 2015 at a meeting with Katie Baird, Chuck Adams and Kevin Floyd falsely stated that Plaintiff told drivers to falsify their breaks. However, this was patently and unequivocally false and Plaintiff does not believe any driver(s) actually stated that as Plaintiff never told a driver to falsify records. Additionally, Plaintiff asked for the statement (s) of who allegedly said this but was denied access to them. Moreover, none of the drivers who supposedly made these statements or who allegedly falsified documents were fired; yet, Plaintiff (black) and Mike Garcia (Hispanic) were both terminated.

25.     In fact, in contradiction to the assertion that Plaintiff told drivers to falsify records, on October 28, 2015 Plaintiff actually suspended Damien Camacho for falsifying documents. Additionally, in previous years Plaintiff had terminated employees for falsifying documents (for example, Victor Lopez, Terry Speed, Giovanni Santana).

26.     On October 29, 2015, Plaintiff attended a Bay Delivery meeting with Adams. At the end of the meeting Adams stated there was "a lack of synergy" amongst Dan Shorten (white), Mike Garcia (Hispanic), and Plaintiff (black), and informed us "In less than a year there will be a different group here". Interestingly, only Dan Shorten remains employed with Pepsi of the three (3).

27.     On the morning of November 25, 2015, while speaking with Mike Garcia and Plaintiff, Adams again stated that he doesn't know why Eli Rios is employed with Pepsi because Rios "doesn't speak English well". Again, as previously alleged, Adams constantly made similar racist comments without repercussions.

28.     Additional and other incidents of preferential treatment afforded whites and not blacks include:   (A) Chuck Adams (W/M) sent text of "Nothing compares to

you" video to 2 male employees in Ocala implying these employees were a couple. This is considered inappropriate conduct at Pepsi and if Plaintiff, or a black employee had done this they would have been reprimanded, if not terminated. Nothing was done to Adams. (B) Tony Todd (W/M) called an African-American employee a "boy" which is a racially demeaning term. This was referred to HR and he was told by HR to apologize but he refused. Nothing was done to him. (C) Sexual harassment complaint filed against Brooks Turton (white) by another male employee. Nothing was done to Turton as a result of this complaint. Interestingly, Turton's wife worked in HR and other male employees had made similar/same sexual harassment complaints about Turton. However, Turton was never terminated or suspended or even reprimanded.

29.     As further evidence of the discrimination Plaintiff was subjected to and the pattern of discriminatory and unfair treatment of Plaintiff by Defendant(s), in 2013, Kevin Horton (W/M) was promoted as Sales District Leader (SDL) over Plaintiff. Horton had less time (or less seniority) than Plaintiff. Horton had less education or no formal education. To this point, Plaintiff had an Associate Degree at the time. Also, Horton has no Warehouse or Delivery Supervisor experience while Plaintiff had 8-9 years of experience. Likewise, in late 2015, Brittany Honor (Female) was hired and promoted to Sales District Leader over Plaintiff. Honor had less experience, qualifications and seniority than Plaintiff, and in fact, Honor simply put her name in and was told to report to Orlando as she was promoted, without a formal interview.

30.     In addition to the facts and allegation in paragraph 29, Amelia Zabel (White Female) was promoted to Sales District Leader (SDL) in 2015. Zabel did not interview for the position but was simply promoted. She did not even know she was

being promoted to the Orlando position until she was given the job. Although she had a BA degree and Plaintiff had an AA degree, Plaintiff had more experience as a Warehouse Supervisor and Delivery Supervisor, more seniority and Plaintiff had a CDL Class "A" license and Zabel did not. In fact, Plaintiff met with Floyd when SDL (Sales District Leader) role came open. This was in 2015. He explained that Plaintiff would be wasting his time to put in for this promotion and to take my name out. Plaintiff was not afforded an interview and Floyd advised Plaintiff, "It wouldn't do any good".

31.     Additionally, besides the racially discriminatory conduct and racially hostile work environment set forth herein, Plaintiff was retaliated against and was actually suspended and terminated because Plaintiff continued to complain, question and inquire about the unfair and discriminatory treatment he was enduring, the lack of and unfair promotion opportunities and the discriminatory conduct Plaintiff witnessed. In fact, the last time Plaintiff complained about this was in September and October of 2015, and Plaintiff was suspended November 25, 2015, a mere one (1) month or less later. Plaintiff was never recalled to work and was ultimately terminated on January 8, 2016.

## COUNT I: <u>VIOLATIONS OF TITLE VII AGAINST DEFENDANT</u>

### ("Race discrimination" "Racial Harassment" "Retaliation")

32.     Plaintiff adopts by reference, as if set out fully and completely in this Count, the following statements of this Complaint: Paragraphs 1 through 31.

33.     Plaintiff has exhausted his administrative remedies as described in paragraph 5 above and therefore all conditions precedent to filing suit under Title VII have been met.

34.     Defendant(s) by and through Defendant's agents, engaged in unlawful

employment practices involving Plaintiff because of his race and color.

35.     Defendant(s) by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000e-2(a).

36.     Defendant, by and through Defendant's agents, classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to other non-black employees similarly situated in violation of 42 U.S.C. Section 2000e-2(a).

37.     Plaintiff, a black male, was subjected to **harassment** because of his race and color in that Plaintiff was subjected to ongoing and constant **racial harassment and hostile treatment** in that he was the target of derogatory comments, treatment and remarks as described in paragraphs <u>10, 11, 12, 13, 16, 15, 17, 18, 21, 22, 24, 26, 27 and 28</u> above which created a hostile work environment. Plaintiff complained, yet his complaints were ignored or dismissed, and no remedial or disciplinary actions were taken.

38.     Plaintiff, a black male, was subjected to **discrimination** because of his race and color in that Plaintiff was subjected to ongoing and constant **racial discrimination, including failure to be promoted** in that he was the target of discriminatory acts and/or omissions and denied promotion due to his race as described in paragraphs <u>9 through 30</u> above. Plaintiff complained, yet his complaints were ignored or dismissed, and no remedial or disciplinary actions were taken.

39.     Plaintiff alleges that Defendant instituted a campaign of retaliation which

ultimately concluded in his employment termination as set forth in paragraph 31. This

retaliation was and is due to Plaintiff exercising Plaintiff's rights by complaining on

numerous occasions and opposing a racial discriminatory practice against his person

because of her race and color of skin as alleged in 10 through 30.

40.     There was a direct casual connection between Plaintiff's protected

activities and Defendant's subsequent adverse actions against him.  In fact, of Plaintiff

would have known he would be retaliated against this would have dissuaded Plaintiff

from complaining about discriminatory and unfair conduct by the Defendant.  As a direct

and proximate result of the aforementioned violations, Plaintiff has suffered injuries, loss

of income, loss of benefits, loss of reputation, embarrassment and humiliation,

inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe

emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages,

lost benefits, lost income including back pay and front pay, prejudgment interest,

attorney's fees and costs pursuant to Title VII, punitive damages, a trial by jury and any

other relief this court deems just and proper.

## COUNT II: VIOLATIONS OF FCRA 760.01 AGAINST DEFENDANT

### ("Race discrimination" "Racial Harassment" "Retaliation")

41.     Plaintiff adopts by reference, as if set out fully and completely in this

Count, the following statements of this Complaint:  Paragraphs 1 through 31.

42.     Plaintiff has exhausted his administrative remedies as described in

paragraph 5 above and therefore all conditions precedent to filing suit under the Florida

Civil Rights Act, 760.01 et seq. have been met.

43.     Defendant(s) by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of his race and color.

44.     Defendant(s) by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race and color in violation of FCRA 760.01 et seq.,

45.     Defendant, by and through Defendant's agents, classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to other non-black employees similarly situated in violation of FCRA 760.01 et seq.,

46.     Plaintiff, a black male, was subjected to **harassment** because of his race and color in that Plaintiff was subjected to ongoing and constant **racial harassment and hostile treatment** in that he was the target of derogatory comments, treatment and remarks as described in paragraphs 10, 11, 12, 13, 16, 15, 17, 18, 21, 22, 24, 26, 27 and 28 above which created a hostile work environment. Plaintiff complained, yet his complaints were ignored or dismissed, and no remedial or disciplinary actions were taken.

47.     Plaintiff, a black male, was subjected to **discrimination** because of his race and color in that Plaintiff was subjected to ongoing and constant **racial discrimination, including failure to be promoted** in that he was the target of discriminatory acts and/or omissions and denied promotion due to his race as described in paragraphs 9 through 30 above. Plaintiff complained, yet his complaints were ignored or dismissed, and no remedial or disciplinary actions were taken.

48.    Plaintiff alleges that Defendant instituted a campaign of retaliation which ultimately concluded in his employment termination as set forth in paragraph 31. This retaliation was and is due to Plaintiff exercising Plaintiff's rights by complaining on numerous occasions and opposing a racial discriminatory practice against his person because of his race and color of skin as alleged in 10 through 30.

49.    There was a direct casual connection between Plaintiff's protected activities and Defendant's subsequent adverse actions against him. In fact, if Plaintiff would have known he would be retaliated against this would have dissuaded Plaintiff from complaining about discriminatory and unfair conduct by the Defendant. As a direct and proximate result of the aforementioned violations, Plaintiff has suffered injuries, loss of income, loss of benefits, loss of reputation, embarrassment and humiliation, inconvenience, loss of enjoyment of life, emotional pain and suffering, and severe emotional distress and anguish.

**WHEREFORE**, Plaintiff demands the following relief: compensatory damages, lost benefits, lost income including back pay and front pay, prejudgment interest, attorney's fees and costs pursuant to FCRA 760.01 and punitive damages as set forth in FCRA 760.11(5), a trial by jury and any other relief this court deems just and proper.

**DATED this the 9TH day of July 2019.**

By: **/S/ Frank T. Allen**
FRANK T. ALLEN, ESQUIRE
Florida Bar No.: 0033464
**THE ALLEN FIRM, P.A.**
A Professional Association
605 E. Robinson Street, Suite 130
Orlando, FL 32801

Tel. (407) 481-8103
Fax (407) 481-0009
E-Mail: ALLENF551@aol.com
Trial Counsel and Attorneys for Plaintiff

_____
TRAVIS LONG, Plaintiff